UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TORI ANN LAMONDA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>　　　　　　　Defendant. | Case No. 3:16-cv-00587-HDM-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 14, 20 |

　　　This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

　　　Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 14.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand. (ECF Nos. 20, 21.)

　　　After a thorough review, the court recommends that Plaintiff's motion to reverse and remand for an award of benefits be granted, and that the Commissioner's cross-motion be denied.

**I. BACKGROUND**

　　　On July 10, 2012, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning November 13, 2011. (Administrative Record (AR) 186-192.) The application was denied initially and on reconsideration. (AR 113-118, 123-127.)

　　　Plaintiff requested a hearing before an administrative law judge (ALJ). (AR. 129.) ALJ Eileen Burlison held a hearing on February 3, 2015. (AR 48-77.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken

from a vocational expert (VE). On March 17, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR. 28-42.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR. 1-4, 20.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ erred in finding she did not meet the listing for her mental impairments; (2) the ALJ did not account for limitations in concentration, persistence or pace; (3) the ALJ erred in giving little weight to the opinion of Ellen Marlene Mamolen, A.P.R.N.; and (4) the ALJ's adverse credibility determination is not supported by substantial evidence.

## II. STANDARD OF REVIEW

### A. Substantial Evidence

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222

(9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments.

20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.*

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date of November 13, 2011. (AR 30.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: osteoporosis, osteogenesis imperfecta type I, scoliosis of the thoracolumbar spine, lumbar degenerative disc disease, migraines, depression, and anxiety. (AR 30.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 31-32.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except she was limited as follows: she could perform postural activities occasionally; engage in frequent overhead reaching and handling; must avoid vibrations and hazards, including working at heights or operating dangerous moving machinery; and, she could have brief and superficial contact with the public, supervisors, and co-workers. (AR 32-38.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 39-40.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including: laundry aide (Dictionary of Occupational Titles (DOT) 302.685-010), housekeeper (DOT 323.687-014), and hand packager (DOT 55.687-074). (AR 40-41.) As a result, the ALJ found Plaintiff not disabled from November 13, 2011, through the date of the decision. (AR 41.)

**B. Mental Impairment Listing 12.04**

Plaintiff argues that she meets the criteria for Listed Impairment 12.04, and the ALJ erred in not making this determination.

As noted above, the Commissioner presumes the Listed Impairments are severe enough to

preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). Therefore, if the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d).

Insofar as it is relevant to the pending motions, the listing for mental disorders that include depressive, bipolar and related disorders, is set forth in section 12.04. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.A.1. Listed Impairment 12.04 has three paragraphs, designated A, B and C, and the claimant's mental disorder must satisfy the requirements of both A and B, or both A and C. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.

Paragraph A includes the "medical criteria." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.a. For Listing 12.04, the claimant must show medical documentation of the requirements of depressive disorder, characterized by five or more of the following: (a) depressed mood; (b) diminished interest in almost all activities; (c) appetite disturbance with change in weight; (d) sleep disturbance; (e) observable psychomotor agitation or retardation; (f) decreased energy; (g) feelings of guilt or worthlessness; (h) difficulty concentrating or thinking; (i) thoughts of death or suicide. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.A.

The paragraph A criteria is not at issue here, as the ALJ did not include any discussion that Plaintiff did not satisfy the medical or diagnostic criteria for Listed Impairment 12.04. Nevertheless, the court finds it is beyond dispute that Plaintiff satisfies the paragraph A criteria. The evidence reflects that Plaintiff grew up with a stepfather who was verbally and physically abusive toward her and her mother. In addition, as an adult, Plaintiff suffered the tragic loss of her first husband in a work-related accident, and then her second husband, who died in a fiery crash in a truck on his way to work. After trying to manage her mental health issues on her own, Plaintiff started seeing a psychologist and began a regimen of counseling and medication management. Plaintiff was diagnosed with anxiety, depression, and post-traumatic stress disorder (PTSD), and consistently described symptoms including depressed mood, diminished interest in activities, sleep disturbance, decreased energy and difficulty concentrating.

The court will skip ahead for a moment to Paragraph C, which provides the criteria used to

evaluate "serious and persistent mental disorders." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.c. To satisfy the paragraph C criteria, there must be a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both: (1) treatment, therapy, support or a highly structured setting that diminishes the signs and symptoms of the disorder, and (2) minimal capacity to adapt to changes in the environment or demands that are not already part of daily life. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.c, § 12.04.C. Plaintiff does not argue that she met the paragraph C criteria. As such, the court's analysis will focus on whether the ALJ erred in finding Plaintiff did not satisfy the paragraph B criteria with respect to Listed Impairment 12.04.

Paragraph B includes the "functional criteria." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.b. The four levels of mental functioning are: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) concentration, persistence, or pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.B. To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two of the four stated areas of mental functioning. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.b, 12.00.F.2, § 12.04.B. "Marked" limitation means that functioning in these areas independently, appropriately, effectively, and on a sustained basis, is "seriously limited." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.F.2.d.

Here, in discussing Listed Impairment 12.04, the ALJ concluded Plaintiff had *mild* limitation in activities of daily living, *moderate* limitation in social functioning, and *mild* limitation in the ability to maintain concentration, persistence or pace. (AR 31-32.)

Plaintiff argues that the ALJ erred because she did have *marked* limitations in social functioning, as well as in concentration, persistence or pace. The court will focus on those two functional criteria even though the ALJ's decision, and the Commissioner's response and cross-motion, contain a broader discussion of the functional criteria.

Insofar as social functioning is concerned, the regulation provides: "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.E.2. "Examples include: cooperating with

others; asking for help when needed; handling conflicts with others; stating own point of view; initiating of sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.E.2.

Again, the ALJ concluded Plaintiff was *moderately* limited in terms of social functioning. The ALJ commented that despite allegations of mood swings, depression, and panic attacks, Plaintiff was still capable of maintaining interaction with individuals in a variety of situations independently, appropriately, effectively and on a sustained basis. In support of this conclusion, the ALJ only cited testimony that Plaintiff goes to church and engages in social activities with friends and family. (AR 31.)

In arguing that she actually had *marked* restrictions in social functioning, Plaintiff points out that she would go to church a block away from her house so she could leave if she had difficulty with her mental impairments. (ECF No. 14 at 10, citing AR 66.) When she spent time with family, she had to take her own car so she could leave if she did not feel well. (ECF No. 14 at 11, citing AR 67.) She did not participate in group activities. (ECF No. 14 at 11.) Her treating psychologist, Ralph Baker, Ph.D., noted that she preferred to keep herself isolated. (ECF No. 14 at 11, citing AR 515, 540, 542-47, 551-52, 561-62, 568.) She had a woman doing her shopping for her. (ECF No. 14 at 11, citing AR 57.) In addition, she reports that when she was treated by Dr. Baker, she was continuously assessed with a global assessment of functioning (GAF) score of 50. (ECF No. 14 at 11, citing AR 540, 542-47, 551-52, 561.)[1]

Insofar as Plaintiff argues that the impairment is *marked* because she lived close to the church and drove a car when visiting friends, the Commissioner contends that this does not

---

[1] "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'" *Garrison v. Colvin*, 759 F.3d 995, 1002 n. 4 (9th Cir. 2014) (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998)). "According to the [Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition] DSM-IV, a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'" *Id.* "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning.'" *Id.* "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." *Id.*

establish an episode where she either had to actually leave church or leave when visiting friends. (ECF No. 20 at 4.) The Commissioner points to a statement by Plaintiff's fiancé that she took care of grandchildren a few days every couple of weeks, she walked and drove a car, shopped in stores for groceries and gifts for her grandchild, and that she enjoyed walking and visiting her daughter, granddaughter, and friends. (ECF No. 20 at 4, citing AR 238-39.) Finally, the Commissioner cites the findings of reviewing psychologists Susan Kotler, Ph.D., and Leif Leaf, Ph.D., that Plaintiff had only *moderate* restrictions in social functioning. (ECF No. 20 at 4.)

Plaintiff did testify that she sometimes went to church, but, as she points out, she qualified that with a statement that she lived down the street, and would just leave and go home if she had a problem. (AR 66-67.) With respect to seeing friends and family, she specifically testified that she had to take her own car because she never knew how she was going to feel, and sometimes had to leave earlier than expected. (AR 67.) She also stated that she would not go to certain places they (her family) went because she was not feeling well. (AR 67, 231-32.) While her fiancé reported that Plaintiff did visit friends and family, he also qualified this statement by saying that it depended on how she was feeling. (AR 239.) Plaintiff frequently indicated that she did not like being around people. (AR 258.)

Her medical records reflect that she reported to her psychologist that she had to quit her job in 2011 because she had a hard time being around people, and that she tended to isolate herself at home and venture out only when necessary. (AR 545, 547, 561, 562, 568.) She reported difficulty every time she had to be in a large group of people, including family, and that being around people brought on panic attacks. (AR 543, 542, 544, 547, 551, 553, 554.)

While the Commissioner points to Plaintiff's role as a caretaker for her grandchild, this conduct was not discussed by the ALJ relative to paragraph B. Moreover, Plaintiff reported she only did this a couple of times every few weeks, and only for up to four hours. (AR 228.) She also reported that with her symptoms, she was not able to babysit as much, and was not able to drive as much. (AR 228.) Dr. Baker consistently wrote in his progress notes that Plaintiff reported that driving and even being a passenger in a car contributed to her anxiety and panic attacks. She reported to him that she spent most of her time at home because her depression and anxiety made

it extremely difficult to be in public and interact with others. (AR 563.)

In his mental capacity assessment, Dr. Baker concluded that Plaintiff had *marked* limitation in her ability to interact appropriately with the general public, and in the ability to accept instructions and respond appropriately to criticism from supervisors. (AR 521.) He explained that due to her anxiety and depression, she would have *extreme* difficulty interacting with others in a work setting. (AR 521.)

Richard W. Lewis, Ph.D., who performed a consultative mental status examination, described Plaintiff as having "decent social skills," but nevertheless stated that she was "too easily upset to interact appropriately at this time." (AR 512.)

The State agency reviewing psychologists, on the other hand, found Plaintiff only *moderately* limited in the ability to interact appropriately with the public, finding she could do so in brief, non-intensive encounters, without further elaboration. (AR 89.)

The court finds that the ALJ's conclusion that Plaintiff had only moderate, and not marked limitation in social functioning is not supported by substantial evidence in the record. The ALJ supported her conclusion with only the brief reference to testimony that Plaintiff goes to church and engages in social activities with friends and family, ignoring the qualifying statements made relative to this testimony and the consistent reports regarding difficulties she had engaging with the public relative to her mental condition; the indication in the record that she had to quit her job because of difficulty being around people; as well as the contrary findings by not only her treating psychologist, but the consultative examining psychologist.

Since Plaintiff must establish *marked* limitation in two areas in Paragraph B, the court will now turn to concentration, persistence or pace. Concentration, persistence or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.E.3. "Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full

day without needing more than the allotted number or length of rest periods during the day." *Id.*

The ALJ found Plaintiff was only mildly limited in concentration, persistence or pace. (AR 31.) Despite allegations of difficulty focusing, the ALJ concluded that Plaintiff still had the ability to sustain focused attention and concentration sufficiently long enough to permit timely and appropriate completion of tasks commonly found in work settings, citing the fact that she volunteers for a crisis hotline answering phone calls once a week (which the ALJ said demonstrated some capacity to focus and concentrate in engaging with others). (AR 31-32.) The ALJ also said that Plaintiff reported she could pay attention for hours watching television, that she had a driver's license and drove. (AR 32.)

Plaintiff argues that she had *marked* restrictions in concentration, persistence and pace. (ECF No. 14 at 11.) She contends that the fact that she volunteered one night a week for a crisis hotline does not prove the opposite, as she testified she usually slept while on call and only had to answer the phone if it rang. (ECF No. 14 at 11, citing AR 70.) Concentration, persistence and pace are measured by the ability to do those things on a sustained basis, so she claims that the volunteer work does not support a finding of only mild restriction. (ECF No. 14 at 11.) She points out that in the consultative examination, Dr. Lewis noted that she lost the ability to concentrate as soon as she was put under pressure; she performed terribly on serial sevens and threes; she performed poorly on alphanumerical counting; and, concluded she would be unable to sustain sufficient attention and concentration to work. (ECF No. 14 at 11-12, citing AR 512.) Dr. Baker also concluded she had marked limitations in the ability to maintain concentration for extended periods and to perform activities within a schedule. (ECF No. 14 at 12, citing AR 520.)

In response, the Commissioner makes reference to Dr. Kotler's and Dr. Leaf's conclusions that Plaintiff had only *moderate* restrictions in concentration, persistence and pace with respect to carrying out detailed instructions. (ECF No. 20 at 5, citing AR 88, 108.) In addition, the Commissioner points to statements by Plaintiff's fiancé that she had no problem paying bills, handling a savings and checking account, that she enjoyed reading, could pay attention for thirty to forty-five minutes, and could follow written and spoken instructions well. (ECF No. 20 at 5, citing AR 238-40.) The Commissioner also discusses Dr. Steven Gerson's statement that Plaintiff

could follow instructions without difficulty, and that her concentration was intact. (ECF No. 20 at 5, citing AR 506.)

The court finds the ALJ's determination that Plaintiff had only mild limitation in concentration, persistence or pace is not supported by substantial evidence.

With respect to Plaintiff's involvement with the crisis call center, the ALJ focused on her status as a volunteer, but ignored her testimony concerning the extent of her involvement. Plaintiff testified she volunteered one night a week; she did not have to go anywhere; if she answered a call, she only had to then transfer the call to the right person; she would usually sleep during her shift; and, in the weeks prior to the hearing, she had not received any calls. (AR 70-71.) This does not demonstrate an ability to focus attention on work activities and stay on task on a sustained basis.

The other reasons the ALJ gave for concluding Plaintiff was only mildly limited in this area were that she could watch television and drive.

With respect to the ability to watch television, she testified that she liked a "little bit" of television. (AR 59.) In her adult function report, she indicated that she could watch television for hours, but then qualified it by stating that it depended on how complex the situation was. (AR 232.) The ALJ failed to square her testimony that she liked television a "little bit" with her other report that she was capable of watching television for hours. Nor is there any discussion as to how the ability to watch television translates to an ability to sustain concentration, persistence or pace in the workplace.

Regarding her ability to drive, the ALJ ignored statements in the record that Plaintiff did not drive as much and reports to her psychologist that being in the car brought on panic symptoms.

Dr. Kotler and Dr. Leaf concluded Plaintiff had *moderate* limitation in concentration, persistence or pace, but the ALJ concluded Plaintiff had even less limitation (*mild*) in this area. This is despite the conclusion of Plaintiff's treating psychologist, Dr. Baker, that she was *markedly* limited in this area, and the opinion of the consultative examining psychologist, Dr. Lewis, that she was unable to sustain concentration, persistence or pace at any level in the workplace. (AR 551.)

Plaintiff reported to Dr. Baker that she had to quit her job in 2011 because she was unable to concentrate and focus at work as a result of the grief, anxiety, depression and PTSD following the death of her second husband. (AR 562.) He described her as presenting with difficulty concentrating, focusing and was unable to make or follow through with plans, largely due to her overwhelming anxiety and depression. (AR 551, 558, 561, 562.) She had memory problems due to depression and anxiety, and could not remember things if she did not write them down. (AR 566.) If she had to do more than two tasks, she became anxious and confused. (AR 566.)

In his mental capacity assessment, Dr. Baker concluded that Plaintiff had *marked* difficulty understanding and remembering detailed instructions due to her anxiety and depression; she had *marked* difficulty in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, in the ability to perform activities within a schedule, and maintain regular attendance and be punctual within customary tolerances. (AR 520-21.) He opined that she had *marked* limitation in the ability to complete a normal workday without interruptions from her psychologically-based symptoms, and *extreme* limitation in her ability to complete the workweek as such. (AR 521.) He found that she also had *marked* limitation in the ability to perform at a consistent pace with a standard number and length of rest periods, and was likely to have more than four absences from work per month. (AR 521.) He explained that her anxiety, panic symptoms and depression interfered with her attention span and ability to concentrate, and the stress of work would further exacerbate those symptoms. (AR 521.)

Consultative psychological examiner Dr. Lewis stated that as soon as Plaintiff was put under *any* pressure, she would lose the ability to concentrate and was unable to collect her thoughts, and had terrible performances on serial 7s and serial 3s. (AR 512.) While she did better on "rote" tasks such as reciting the alphabet and counting backward from twenty-one, Dr. Lewis found that her "chronic intense anxiety" "*seriously* impact her capacity to sustain her attention and concentration," and "[e]ven her general intellectual functions are impaired." (AR 512 (emphasis added).) He concluded that she "is unable to sustain sufficient attention, concentration, short and long term recall to carry out *any* level of instructions in a competitive work setting[.]" (AR 512 (emphasis added).)

Given the consistent support for the conclusion that Plaintiff had *marked* limitation in the ability to maintain concentration, persistence or pace by her treating psychologist and consultative examining psychologist, the only way the ALJ could disagree was to discount their opinions in favor of the State reviewing psychologists' opinions (finding Plaintiff only moderately limited in this regard).

The ALJ gave Dr. Baker's opinions "little weight," finding they were "not supported by the routine and limited mental health treatment received by the claimant."

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at

1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

When the ALJ does not give a treating provider's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(i)-(ii) and (c)(3)-(6) in determining how much weight to give each opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion. The failure to consider these factors constitutes reversible legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

Dr. Baker was a treating provider, and even though his opinion was contradicted by the State reviewing psychologists' opinions (that Plaintiff was only moderately limited in concentration, persistence or pace), his opinion was still owed deference. *Garrison,* 759 F.3d at 1012 (citation omitted). In addition, the ALJ was required to set forth specific and legitimate reasons supported by substantial evidence, and include a discussion of the factors in 20 C.F.R. § 404.1527(c)(i)-(ii) and (c)(3)-(6).

Here, the ALJ did not satisfy either of those requirements. There was no discussion of the factors, and the brief reasons cited for giving Dr. Baker's opinions little weight are not supported by substantial evidence in the record.

To the extent the ALJ cited the moderate findings of the State agency reviewing psychologists as a reason for rejecting Dr. Baker's opinions, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).

The only other basis given for rejecting Dr. Baker's opinions was the ALJ's comment that Dr. Baker's assessment was not supported by the routine and limited mental health treatment received by Plaintiff. This is not supported by substantial evidence.

After trying to deal with her mental health issues by herself following the death of her second husband in a horrific accident, Plaintiff began seeing Dr. Baker in August of 2013, when her anxiety, depression and grief intensified to a point where she felt she needed professional help.

She saw him, on average, on a monthly basis. Dr. Baker's progress notes do, in fact, support his findings concerning Plaintiff's ability to sustain concentration, persistence or pace. She reported that she had to quit her job when she could not cope with the stress of work due to grief, anxiety, depression and PTSD. (AR 562.) She was unable to concentrate and focus or function adequately at work, with symptoms that continued to worsen. (AR 562.) She had difficulty concentrating and focusing and an inability to make or follow through with plans, and could not remember things if she did not write them down. (AR 551, 561, 562, 566.) She had racing, intrusive thoughts and hypervigilance. (AR 563, 566.) She became easily overwhelmed if she had more than two tasks to perform, which led to heightened anxiety and panic attacks. (AR 547, 566.) Dr. Baker noted that her depression, anxiety and PTSD interfered with her social, interpersonal, intrapersonal and occupational functioning. (AR 566.) While she reported some improvement as time went on, Dr. Baker noted that it was slight. (AR 542, 543, 544, 545, 546.)

In sum, Dr. Baker's opinions were consistent with the treatment Plaintiff received; therefore, the ALJ's rejection of Dr. Baker's opinion is not supported by substantial evidence.

With respect to Dr. Lewis, the ALJ noted Dr. Lewis' conclusion regarding Plaintiff's inability to sustain sufficient attention and concentration to be able to carry out any level of instruction in a work setting, but apparently rejected it on the basis that Dr. Lewis indicated that she *may* improve with appropriate treatment. The fact that Plaintiff *might* see improvement with appropriate treatment does not change the fact that Dr. Lewis concluded at that time Plaintiff was unable to sustain sufficient concentration and attention to function in a work setting. Therefore, the reasoning set forth by the ALJ for rejecting Dr. Lewis' opinions is not supported by substantial evidence.

The ALJ gave the 49, 50 and 52 GAF scores assessed by Dr. Baker and Dr. Lewis little weight, stating that they only reveal "snapshots" of impaired and improved behavior, but the GAF scores overall were consistent with the findings of marked impairment.

Finally, the court notes that the two nonexamining psychologists whose opinions the ALJ gave great weight provided no substantive explanations for their conclusions that Plaintiff was only *moderately* limited with respect to concentration, persistence or pace. This goes against the

ALJ's decision to give their opinions great weight over that of Plaintiff's treating and examining providers.

In sum, the ALJ erred in finding Plaintiff had only mild limitation in concentration, persistence or pace. Instead, substantial evidence in the record supports a finding that Plaintiff did have *marked* limitations in concentration, persistence or pace.

Since the evidence supports a finding that Plaintiff met both the paragraph A and paragraph B criteria of Listing 12.04, Plaintiff should be found disabled, and the court need not reach the other arguments raised by Plaintiff. The Commissioner's decision should be reversed and remanded for an award of benefits, and the Commissioner's cross-motion should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Plaintiff's motion to reverse and remand for an award of benefits (ECF No. 14), and **DENYING** the Commissioner's cross-motion for summary judgment (ECF NO. 20).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: December 22, 2017.

*William G. Cobb*
_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE